UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Spinelogik, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Genesys Orthopedics Systems, L.L.C.,<br><br>Defendant. | Case No. 2:23-cv-297<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Spinelogik, Inc. ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Genesys Orthopedics Systems, L.L.C.  ("Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.    Spinelogik, Inc. is a corporation organized and existing under the laws of the State of Oregon with its principal place of business at 1203 Willamette Street, Suite 200, Eugene, Oregon 97401.

2.    Upon information and belief, Defendant is a company organized and existing under the laws of the State of Texas, and as shown below, with a place of business at 111 W. Tyler Street, Longview, Texas 75601. Upon information and belief, Defendant can be served with process upon its managing member, Josh Kaufmann, located at 3800 Desert Flower, Austin, TX 78746.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

5.      Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

6.      Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the infringing methods and systems to introduce and sell millions of products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

7.      Defendant maintains regular, physical, continuous, and established places of businesses, including data centers, in this District, which Defendant has established, ratified, and controlled; have employed thousands of employees to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

8.      As shown below, Defendant has authorized distributors in the Eastern District of Texas, including Voyage Medical Solutions ("Voyage" and collectively "EDTX Distributors"):



*See* screenshot of Justin Jenkin's LinkedIn page, as CEO of Voyage Medical Solutions and distributor of Defendant.[1]

9.      As shown below, Voyage is located in this District:



*See* https://www.voyagemedicalsolutions.com/contact/ (screenshot of Voyage Medical Solutions webpage with location in this District).

---

[1] https://www.linkedin.com/in/brian-kuehl-57209220?challengeId=AQHU_9wqycDEKQAAAYi2LYdxGNAcXJ6reTWi_ZA-AGIStDX6hfj7EAfY1DOD0WxqN4X3XcG0Kp9-73IPkcxWC7VX8XvQ4z6n6g&submissionId=a9872a25-d04d-6817-c74a-d2138eb85979&challengeSource=AgHTHcSHksJnJgAAAYi2LjC2eBcB4qaKWq4G8rG91rNZfSb00d0gGsLkaAsHahs&challegeType=AgEpM1rr6OIeIQAAAYi2LjC6yqZvF0ik_L1XJSLowSwk5lrnmOmwHc4&memberId=AgF_dHSmaXT7dwAAAYi2LjC-jtUUnVxChU1RnMLspP-BSzg&recognizeDevice=AgHXn4G-xNX5cAAAAYi2LjDBWLhjW27OC-2X9AoslttfE19pQ00qN

10.     Voyage and the EDTX Distributors in this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them—authorized distributors in the United States.

11.     Defendant has a defined places and sets out the physical specifications for its exclusive and separate areas within Voyage and the EDTX locations. Defendant also explicitly retains control over the exclusiveness of the defined places and separate areas as well as their locations, resulting in physical locations for Defendant within this District.

12.     Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at Voyage and the EDTX Distributor locations by the regular, physical presence of its employees.

13.     Voyage and the EDTX Distributors are Defendant's agents for the purpose of conducting Defendant's business in this District because Defendant provides regular instructions directing Voyage's and the EDTX Distributor's performance of the warehousing, marketing, packaging and sales services that Defendant offers to its customers.

14.     Defendant retains complete, absolute, and exclusive control over its exclusive and separate areas within the Voyage and EDTX Distributor locations.

15.     Defendant ratifies its exclusive and separate areas within the Voyage and EDTX Distributor locations because it exercises interim control over the Voyage and EDTX Distributor's activities and holds out to the public that Defendant's distribution, warehousing, marketing and sales of the products are being performed at the Voyage and EDTX Distributor locations in this District. Within the exclusive and separate areas within the Voyage and EDTX Distributor locations,

Defendant has absolute control over their conduct. Defendant does not merely use the exclusive

and separate areas within the Voyage and EDTX Distributor locations within this District, but

controls all aspects of their conduct as it pertains to Defendant's exclusive and restrictive

exclusive Defendant areas.

16.     Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and

1400(b).  As noted above, Defendant maintains a regular and established business presence in

this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also*

*AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9

(E.D. Tex. May 12, 2022)

**BACKGROUND AND PATENTS-IN-SUIT**

17.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 8,460,385 ("the

'385 Patent") titled "Fusion Member for Insertion Between Vertebral Bodies" relating to spinal

implants and surgical procedures for spinal fusion and stabilization.

18.     By operation of law, the '385 Patent was originally issued and exclusively vested to the named

inventor, Dr. Jeffrey Paris Wensel, as of the issue date of the '385 Patent.  *See* 35 U.S.C. § 261;

*Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020);

*Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,*

565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument, and filed with

the United States Patent and Trademark Office, assigned all rights, title, and interest in the '385

Patent to Spinelogik, Inc.

19.     The '385 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the

United States Code.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                 5

20.   The inventions described and claimed in the '385 Patent were invented individually and independently by Dr. Jeffrey Paris Wensel.

21.   The '385 Patent includes numerous claims defining distinct inventions. As represented in Figs. 1A, 16 and 26A of the '385 Patent below, the inventions generally relate to spinal implants and surgical procedures for spinal fusion and stabilization.



**Figure 1A**



*Figure 16*



*Figure 26A*

22.    The priority date of each of the '385 Patent is at least as early as May 1, 2008.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

23.    Back and neck pain are the leading causes of disability and lost productivity for American workers under the age of 45. Degenerative disc disease and its sequelae, whereby the fibrocartilaginous disc between adjacent vertebral bodies loses height, hydration and structural integrity, is one of the most common causes of back and neck pain and may develop secondary to traumatic injuries, inflammatory processes or various degenerative disorders. When conservative treatment fails, surgical fusion of the vertebral segments across the abnormal disc may be the only currently available procedure for pain relief. An increasing number of these spinal fusions are performed each year. It is estimated that over half a million of these procedures were performed in the United States last year alone.

24.    Before the inventions of the '385 Patent, approaches often failed due to inadequate structural integrity. Subsequently, cortical bone dowels and femoral ring allografts were employed in an attempt to restore disc space height and augment structural integrity. Other prior art devices incorporated or were coated with human bone morphogenetic protein or other agents to promote new bone formation and accelerate fusion. Despite these advancements, failure rates for spinal fusion surgeries remain unacceptably high, greater than 10 percent in most series.

25.    Therefore, there is a need in the art for an improved method to effect a more rapid, reliable fusion between unstable vertebral segments and avoid the considerable medical and economic impact of failed spinal fusions.

26.    The inventor of the '385 Patent conceived new an apparatus that (1) delivers a fusion member between two vertebral bodies after at least a portion of the fibrocartilaginous disc between the vertebral bodies has been removed, and (2) affixes the fusion member to the vertebral bodies. In

some embodiments, the apparatus includes (1) a fusion member that is delivered and positioned between the vertebral bodies, (2) a delivery mechanism that delivers and positions the fusion member between the vertebral bodies, and (3) an anchoring member that affixes the fusion member to the vertebral bodies.

27.    The '385 Patent is a pioneering patent and has been cited as relevant prior art in 52 subsequent United States Patent Applications, including Applications Assigned to Defendant and such technology leaders and academia as Genesys Spine, Alphatec Spine, Inc., DePuy Synthes Products, Pinnacle Spine Group and In Queue Innovations.

28.    The claims of the '385 Patent were all properly issued and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## DEFENDANT'S INFRINGING PRODUCTS

29.    Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides endoscopic targeting methods and systems, including, but not limited to, the Genesys Spine – AIS-C Stand-Alone System and AIS-C 3D Printed Cervical Standalone ("Accused Instrumentalities"), that utilize the '385 Patent's patented spinal implants methods and systems. On information and belief, these spinal implants systems and methods include:

- a fusion member configured to position between first and second vertebral bodies, the fusion member comprising a first curved channel and a second curved channel;





## Indications for Use:

The Genesys Spine Cervical Standalone System is a standalone anterior cervical interbody fusion device indicated for use in skeletally mature patients with degenerative disc disease (DDD) with accompanying radicular symptoms at one level from C2-T1. DDD is defined as discogenic pain with degeneration of the disc confirmed by history and radiographic studies. These patients should have had six weeks of non-operative treatment. The Genesys Spine Cervical Standalone System is to be used with autogenous bone graft and implanted via an anterior approach.

https://www.genesysspine.com/products/cervical/ais-c-standalone-system/

- a first anchoring member configured to insert through the first curved channel and partially into the first vertebral body while a portion of the first anchoring member remains within the fusion member, in order to couple the fusion member with the first vertebral body;



*See* 1:26 Timemark
https://www.youtube.com/watch?v=9BZYz1IldCM&ab_channel=GenesysSpine

- a second anchoring member configured to insert through the second curved channel and partially into the second vertebral body while a portion of the second anchoring member remains within the fusion member, in order to couple the fusion member with the second vertebral body; and



See 1:26 Timemark
https://www.youtube.com/watch?v=9BZYz1IldCM&ab_channel=GenesysSpine

- wherein the first curved channel has a first cross-sectional plane along a first path that is traversed by the first curved channel through the fusion member and the second curved channel has a second cross-sectional plane along a second path that is traversed by the

second curved channel through the fusion member, wherein the first and second cross-sectional planes are parallel to each other, as invented in the '385 Patent.



See 1:26 Timemark
https://www.youtube.com/watch?v=9BZYz1IldCM&ab_channel=GenesysSpine

See 1:26 Timemark
https://www.youtube.com/watch?v=9BZYz1IldCM&ab_channel=GenesysSpine



See 1:28 Timemark
https://www.youtube.com/watch?v=..._channel=SPINEMarketGroup

30.     As shown above, Defendant's products include each and every limitation of at least, but not

limited to, claim 1 of the '385 Patent and therefore literally infringe these claims. Plaintiff

reserves the right to assert additional claims and to assert infringement under the doctrine of

equivalents in light of information learned during discovery or in view of this Court's claim

construction order.

## COUNT I
## Infringement of U.S. Patent No. 8,460,385

31.     Plaintiff incorporates the above paragraphs by reference.

32.     Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the

United States its Accused Instrumentalities as shown above.

33.     Defendant thus has infringed and continues to infringe at least claim 1 of the '385 Patent literally

and/or under the doctrine of equivalents.

34.     Defendant has also actively induced and will continue to actively induce the infringement of at

least one of claim 1 of the '385 Patent, in violation of 35 U.S.C. § 271(b), by, among other

things, actively and knowingly aiding and abetting infringement of others through activities such

as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '385 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '385 Patent.

35.     Defendant individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '385 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '385 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '385 claims.

36.     Defendant has been on actual notice of the '385 Patent at least as early as May 2016, as it was cited it in Defendant's own patent file histories. Defendant's direct and indirect infringement of the '385 Patent has thus been committed with knowledge of the '385 Patent, making Defendant liable for direct, indirect, and willful infringement.

37.     Defendant's infringement of the '385 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

38.     Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such

infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

39.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.     Declaring that Defendant has infringed the '385 Patent;

2.     Awarding Plaintiff its damages suffered because of Defendant's infringement of the '385 Patent;

3.     Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4.     An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '385 Patent;

5.     Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the '385 Patent;

6.     Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired '385 Patent; and

7.     Granting Plaintiff such further relief as the Court finds appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

/s/ Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**